```
 1
 2
 3
 4
 5
 6
 7
 8                      UNITED STATES DISTRICT COURT
 9                     CENTRAL DISTRICT OF CALIFORNIA
10                             WESTERN DIVISION
11  MARK P. GALLAGHER,            )
                                  )
12               Plaintiff,       )   Case  No. CV 05-3119 AJW
                                  )
13        v.                      )   MEMORANDUM OF DECISION
                                  )
14  JO ANNE B. BARNHART,          )
    Commissioner of the Social    )
15  Security Administration,      )
                                  )
16               Defendant.       )
    _____)
17
```

18     Plaintiff filed this action seeking reversal of the decision of
19 defendant, the Commissioner of the Social Security Administration (the
20 "Commissioner"), denying plaintiff's application for supplemental
21 security income ("SSI") benefits. The parties have filed a Joint
22 Stipulation ("JS") setting forth their contentions with respect to each
23 disputed issue.

24                    **Administrative Proceedings**

25     The procedural facts are summarized in the Joint Stipulation. [JS
26 2-3]. Plaintiff previously was found disabled due to a dependent
27 personality disorder and was awarded benefits. In a prior hearing
28 decision dated May 2002, Administrative Law Judge Gerald Resnick

terminated plaintiff's benefits on the ground that he was no longer disabled as of January 2000 due to medical improvement. [JS 4; Administrative Record ("AR") 23]. On March 18, 2003, the Appeals Council denied plaintiff's request for review of that decision. Plaintiff did not seek judicial review. [JS 4; AR 23].

On January 17, 2003, shortly before the Appeals Council denied his request for review of the prior decision terminating benefits, plaintiff filed his present application for SSI benefits. [JS 4]. He alleged that he had been disabled since March 12, 1996 due to attention deficit and hyperactivity disorder, autism, lower back problems, and arthritis. [JS 2]. In a written hearing decision dated October 13, 2004, ALJ Robert Evans (the "ALJ") declined to reopen the prior decision terminating benefits, and he invoked the doctrine of res judicata to bar reconsideration of the issue of plaintiff's disability prior to May 30, 2002, the date of the prior final decision terminating benefits. [AR 24]. The ALJ also applied a presumption of continuing non-disability with respect to the period after May 30, 2002. [AR 24].

The ALJ found that plaintiff had severe impairments consisting of mood disorder not otherwise specified ("NOS"); personality disorder with dependent and borderline traits; depressive disorder NOS; and back pain. [AR 30]. The ALJ also determined that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of medium work with non-exertional mental limitations, and that his RFC did not preclude him from performing his past relevant work as a telemarketer. [AR 30]. Accordingly, the ALJ concluded that plaintiff was not disabled from May 30, 2002 through the date of his decision. The Appeals Council denied plaintiff's request for review. [AR 4-6].

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Past relevant work**

Plaintiff contends that the ALJ erred in relying on the prior ALJ's decision to find that plaintiff has past relevant work as a telemarketer. Plaintiff argues that it is unfair to rely on the prior ALJ's decision because the record in this case does not contain "materials relating to the May 30, 2002 ALJ decision ceasing benefits," and therefore plaintiff cannot ascertain whether his earnings records were considered by the prior ALJ. Plaintiff's earnings records from

3

1996 to 2001 are a part of the record in this case, and he contends that those records show that his telemarketing jobs did not rise to the level of substantial gainful activity. [JS 4-6].

Past relevant work is work done within the last 15 years which lasted long enough for the claimant to learn to do it and was "substantial gainful activity." See 20 C.F.R. §§ 404.156(b)(1), 416.960(b)(1). "Substantial gainful activity" is work activity done for pay or profit that involves doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions, any self-employment, and time spent working. 20 C.F.R. §§ 404.1572-.1573, 416.972-.973.

### (A) Application of res judicata

Plaintiff's argument that he has been "deprived of making an argument based upon" the record that was before the prior ALJ and unfairly has been "restricted to the record presented by" the Commissioner in this case appears to be an implicit challenge to the ALJ's application of the doctrine of res judicata and the presumption of continuing non-disability as they apply to the past relevant work determination.[1]

---

[1] In his reply, plaintiff argues that the ALJ "did not invoke administrative res judicata or collateral estoppel" on the issue of past relevant work. [JS 9]. This argument is made for the first time in plaintiff's reply, and it is perplexing because his chief argument is that the application of "res judicata to the facts of this case" would be unjust. [See JS 6]. The ALJ expressly denied reopening. [AR 24 ("There is no basis to reopen ALJ Resnick's decision.")]. He invoked the doctrine of res judicata as to the prior ALJ's decision [AR 24 ("Therefore, ALJ Resnick's decision is res judicata on the question of claimant's disability prior to May 30, 2002.")], and in that context, the ALJ cited the prior ALJ's subsidiary finding that plaintiff's impairments "did not prevent him from performing his past relevant work as a

The Commissioner may apply res judicata to bar reconsideration of a period with respect to which a final determination has been made, by declining to reopen the prior decision. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that the Commissioner properly applied res judicata to bar reconsideration of a period for which a prior, final determination had been made); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (noting that the principles of res judicata apply to administrative decisions). Absent a colorable constitutional claim, the district court lacks subject matter jurisdiction to entertain a claim challenging the denial of reopening. Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (stating that a decision not to reopen a prior, final benefits decision ordinarily does not constitute a final decision and therefore is not subject to judicial review, except where the denial of reopening is challenged on constitutional grounds). A final decision that a claimant was not disabled during an earlier period also creates a presumption that the claimant retained the ability to work after that date. See Schneider v. Commissioner of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 567 (9th Cir. 1983).

The ALJ declined to reopen the prior ALJ's final, unappealed decision concluding that plaintiff was not disabled through the date of the prior decision, and he applied the doctrine of res judicata. [AR 24]. Plaintiff does not contend that the denial of reopening violated his constitutional rights. Regardless of whether his earnings records from 1996 through 2001 were in the record before the prior ALJ,

---

telemarketer ...." [AR 23]. Taken together, those determinations were sufficient to invoke the doctrine of res judicata with respect to the prior ALJ's past relevant work finding.

plaintiff had knowledge of the facts regarding his earnings before the prior ALJ rendered his decision in May 2002. Those facts have not changed. Plaintiff has not shown that the prior decision violated his due process rights, or that he was precluded from seeking judicial review of the prior decision.

In the absence of a colorable claim that the either the prior decision or the decision denying reopening of the prior decision violated his constitutional rights, this court lacks subject matter jurisdiction to review the denial of reopening or the prior ALJ's final decision. Therefore, the ALJ in this case permissibly invoked the doctrine of res judicata and justifiably concluded that no changed circumstances had been shown with respect to the existence of plaintiff's past relevant work.

**(B) Application of the earnings presumption**

Even if plaintiff could demonstrate that the prior ALJ improperly failed to consider his earnings records and that their inclusion in this record is a "changed circumstance," his earnings do not establish that his telemarketing jobs are not past relevant work. See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001)(stating that the claimant has the burden at step four to show that he or she cannot perform past relevant work).

Under the Commissioner's regulations, earnings which averaged more than $500 per month for calendar years after 1989 "ordinarily" will show that the claimant performed substantial gainful activity, while earnings which averaged below $300 per month "ordinarily" will show that the work did not involve substantial gainful activity. Earnings between those two amounts may be considered in conjunction with other information to assess substantial gainful activity. See 20 C.F.R. §§ 404.1574(b),

416.974(b). The

> presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner. Without the presumption, the claimant must produce evidence that he or she has not engaged in substantial gainful activity; if there is no such evidence, the ALJ may find that the claimant has engaged in such work.

Lewis v. Apfel, 236 F.3d 503, 515-516 (9th Cir. 2001). Even when the high or low earnings presumption is triggered, however, it is rebuttable. See 20 C.F.R. §§ 404.1574(b)(6), 416.974(b)(6) (explaining when other information may be considered to determine substantial gainful activity); Lewis, 236 F.3d at 515 ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity.").

In 1997, his highest earnings year, plaintiff earned an average of $363 per month, above the $300 per month in average earnings which creates a presumption against substantial gainful activity, but below the $500 per month amount which creates a presumption in favor of substantial gainful activity. [AR 111]. See 20 C.F.R. §§ 404.1574(b)(2)&(3), 416.974(b)(2)&(3). Because plaintiff's earnings were neither high enough nor low enough to warrant a presumption under the regulations, his earnings did not relieve him of his step-four burden to come forward with other evidence showing that his past work as a telemarketer was not substantial gainful activity. Plaintiff has not come forward with other evidence, but instead relies solely on his earnings.

Moreover, defendant points to evidence in the record indicating that plaintiff's past work as a telemarketer constitutes past relevant

work. [See JS 7-8]. Plaintiff held several telemarketing jobs between 1996 and 2001. [AR 111-113]. Plaintiff concedes that his work as a telemarketer "clearly met the recency and durational requirements of 'past relevant work'" [JS 5], meaning that he held those jobs within the relevant 15-year period and held them long enough to learn how to do them. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Although plaintiff's earnings were not high enough to warrant a presumption that they were substantial gainful activity, plaintiff testified that he worked 20 to 25 hours per week and was paid on commission [AR 266], so that his earnings did not necessarily reflect the full extent of physical and mental activities involved. See 20 C.F.R. §§ 404.1572-.1573, 416.972-.973 (setting forth the factors that are used to assess substantial gainful activity); see also 20 C.F.R. § 404.1572(a)(stating that "work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before").

In sum, plaintiff's earnings records do not demonstrate that the ALJ erred in finding that plaintiff had past relevant work as a telemarketer, and the ALJ's reliance on the prior ALJ's past relevant work finding was not error.

**Medical opinion evidence**

Plaintiff contends that the ALJ did not articulate legally sufficient reasons supported by the record for rejecting the examining source opinions of Drs. Levich and Palmer and the treating source opinions of his treatment providers at Rio Hondo Mental Health.

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If

contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ relied on the opinions of Dr. Colonna, an examining psychologist, and Dr. Glover, a non-examining state agency psychologist, to find that plaintiff had mental impairments consisting of mood disorder NOS, depressive disorder NOS, and personality disorder with dependent and borderline traits, with the following mental limitations: he is able to understand, remember, and carry out short, simplistic instructions, and he is moderately impaired in his ability to (1) understand, remember, and carry out detailed instructions, (2) maintain attention and concentration for extended periods; (3) interact appropriately with the general public, supervisors, coworkers, and peers; (4) respond appropriately to changes in a work setting, and (5) respond appropriately to work pressures in a usual work setting. [AR 30].

The ALJ permissibly rejected the opinion of Dr. Levich, an examining physician who performed an initial evaluation of plaintiff on July 11, 2002, just a few months after the date of the prior ALJ's decision terminating benefits. [AR 122-124]. As the ALJ noted, Dr. Levich relied almost exclusively on plaintiff's subjective symptoms. Although her report included a section entitled "Mental Status Examination," she did not document most of the psychiatric signs ordinarily evaluated on a mental status examination, such as abnormalities in affect, mood, thought process, insight, and recall. Instead of making independent clinical observations of abnormalities,

she merely restated plaintiff's subjective perceptions of his problems. For example, she noted that plaintiff "said he is a nervous person, he worries too much," that plaintiff reported worrying about breaking up with his girlfriend and about his bills, that plaintiff said "he is all right [sic] one minute and then the next he is snapping, he is very irritable ...," and that "[h]e says his autism triggers the mood he is in and that he gets disoriented, when this happens he does not know where he is at half of the time." [AR 123]. See 20 C.F.R. §§ 404.1528(b)&(c); 416.928(b)&(c)(explaining that symptoms are the claimant's description of his or her impairment, while psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality); see generally 20 C.F.R. §§ 404.1520a(b), 416.920a(b) (evaluation of mental impairments). The only medical signs Dr. Levich noted were "involuntary movements of his head and neck, speech is pressured." [AR 123]. Because Dr. Levich did not document the requisite clinical signs but relied almost wholly on plaintiff's own description of his symptoms, the ALJ permissibly rejected her diagnosis of bipolar disorder with psychosis and the Global Assessment of Functioning ("GAF") score of 45 she assigned.[2] [AR 123].

---

[2] The GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. The GAF rating is in the lower of two decile ranges if either the symptom severity or the level of functioning falls within that range (even if the other component does not). Thus, a GAF score of 31 through 40 signifies some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence

Moreover, since Dr. Levich did not express an opinion about plaintiff's work-related functional capacity, in that regard there was nothing to reject.

Like Dr. Levich, Dr. Colonna was an examining physician. She evaluated plaintiff on June 12, 2004 at the Commissioner's request. In addition to recording plaintiff's subjective history, she reviewed medical records, conducted a standard mental status examination, and administered the following psychological tests: Bender Visual-Motor Gestalt Test; Trail Making Test, Parts A & B; Wechsler Adult Intelligence Scale-Third Edition; and Wechsler Memory Scale-Third Edition. [AR 225-226]. She noted numerous instances of "avoidant" behavior, "ridiculous" answers, manipulation, and poor cooperation on plaintiff's part during the mental examination and testing. Dr. Colonna concluded that plaintiff appeared to be motivated by "secondary gain or to regain his disability benefits," and she deemed plaintiff's test results invalid. [AR 222-227]. Based on testing she conducted in

---

of friends or the inability to keep a job. A score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. A score in the range of 61 through 70 denotes some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002); see also Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 598 n.1 (9th Cir. 1999); Sousa v. Chater, 945 F.Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996), rev'd on other grounds, Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); see generally Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

conjunction with her clinical observations, Dr. Colonna opined that plaintiff was in the low-average range of intellectual ability. [AR 224-226]. Her impressions were (1) consider malingering; (2) mood disorder NOS; and (3) personality disorder with borderline and dependent traits. She assigned plaintiff a current GAF score of 65, denoting mild symptoms or mild impairment. Dr. Colonna completed a form indicating that plaintiff had slight impairments in his ability to perform work-related activities, except for a moderate impairment in his ability to respond appropriately to work pressures in a usual work setting. [AR 228-229].

    Dr. Colonna's findings and conclusions generally were consistent with those of Dr. Palmer, who performed a psychological evaluation of plaintiff in Pennsylvania, where he formerly resided, at the request of that state's disability services agency. [AR 161-168]. Like Dr. Colonna, Dr. Palmer commented on plaintiff's "ridiculous responses" [AR 164], poor effort on examination [AR 164], and his failure to provide "useful information" in response to basic questions about his history and condition. [AR 161-164]. Dr. Palmer concluded that plaintiff was an "unreliable reporter." [AR 165]. He gave plaintiff psychiatric diagnoses of depressive disorder NOS and personality disorder with mixed features. [AR 165]. He opined that plaintiff had a good ability to understand, remember, and carry out simple job instructions, but that his work-related abilities otherwise were fair due to his "depressive disorder," "somatic complaints," and "poor record at work." [AR 167-168].

    Plaintiff argues that the ALJ erred in not giving reasons for rejecting Dr. Palmer's opinion, which was summarized in his decision. The ALJ, however, did not say he was rejecting Dr. Palmer's opinion. In fact, he remarked on similarities between Dr. Palmer's opinion and Dr.

Colonna's opinion, which he explicitly relied upon. [See AR 26-27, 29]. Moreover, the ALJ's findings were consistent with Dr. Palmer's opinion. Similar to Dr. Palmer, the ALJ found that plaintiff had a depressive disorder NOS and personality disorder with mixed (borderline and dependent) traits (along with a mood disorder NOS as diagnosed by Dr. Colonna). [AR 30, 165]. The ALJ also found that plaintiff could understand and carry out short, simple instructions, as Dr. Palmer indicated. [AR 30, 167]. The ALJ determined that plaintiff was moderately impaired in other work-related abilities, consistent with the "fair" abilities noted by Dr. Palmer in those areas. [AR 30, 167-168]. These similarities indicate that the ALJ did not intend to reject Dr. Palmer's opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (stating that a reviewing court may draw specific and legitimate inferences from the ALJ's opinion "if those inferences are there to be drawn").

Another reason for inferring that the ALJ did not reject Dr. Palmer's opinion is that the ALJ explicitly relied upon the opinion of Dr. Glover, a non-examining state agency psychologist. Dr. Glover cited Dr. Palmer's consultative opinion in support of his opinion that plaintiff had a depressive disorder and a personality disorder causing non-disabling mild to moderate mental limitations. [See AR 176-194]. Because Dr. Glover's assessment is consistent with the independent clinical findings and conclusions of Dr. Palmer, Dr. Glover's non-examining source opinion and Dr. Colonna's examining source opinion provide substantial evidence supporting the ALJ's decision.

The ALJ permissibly rejected the GAF score of 30 (signifying an inability to function in all areas) given to plaintiff on his initial evaluation at the Rio Hondo Mental Health Clinic, where plaintiff

13

presented in January 2004 seeking "eval[uation] for SSI." [AR 214]. To begin with, the initial assessment was performed and signed by a licensed clinical social worker, not a physician or psychologist.[3] [AR 209-216]. Moreover, in her "diagnostic summary," she noted that plaintiff was a "poor historian" and had "low motivation," echoing the observations of the examining doctors. [AR 213, 214]. She also assessed plaintiff with mood disorder NOS and "R/O malingering." [AR 214]. The contents of her assessment, then, provide little confidence that the GAF score was reliable.

In addition, the ALJ noted that the clinic progress notes do not corroborate the extreme level of functional impairment suggested by a GAF score of 30. Only a few days after his initial assessment, plaintiff was evaluated by a clinic physician for medication management. [AR 201]. The physician's diagnoses were mood disorder NOS, rule out adult ADHD, rule out post-traumatic stress disorder. The physician gave plaintiff a GAF score of 50, denoting a serious impairment in functioning, but on the borderline of the moderate impairment range (scores of 51 through 60). [AR 201].

As the ALJ observed, subsequent clinic progress notes through June 4, 2004 showed visits for medication management rather than for an exacerbation of symptoms, with plaintiff reporting significant improvement in response to his medications. [AR 26]. On April 26, 2004,

---

[3] A licensed clinical social worker working alone is not an "acceptable medical source" whose opinion must be considered under the standards that apply to physicians and other acceptable medical sources. See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining an "acceptable medical source," and explaining that information from "other sources" also may be considered); Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources"), cert. denied, 519 U.S. 881 (1996).

for example, plaintiff "report[ed] doing fairly well on his current meds. Sleep is better. No clear psychotic symptoms reported. No anger outbursts [or] agitation." [AR 232]. On June 3,2004, his next (and last documented) clinic visit, it was noted that plaintiff "continues to do well. He denies feeling depressed or having mood swings." [AR 231]. The ALJ rationally concluded that the clinic progress notes demonstrated a significantly higher level of functioning than the initial GAF score considered in isolation. Furthermore, a GAF score is not determinative of a claimant's RFC. See Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (August 21, 2000)(explaining that the Commissioner did not adopt public comments suggesting that the GAF scale be discussed in the Listing of Impairments because the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings").

For all of these reasons, the ALJ did not err in evaluating the medical opinion evidence.

**Hypothetical question**

Plaintiff contends that the ALJ did not propound a hypothetical question to the vocational expert that reflected all of the limitations stated in his RFC finding.

The ALJ is not obliged to adduce vocational expert testimony to support his past relevant work finding because the burden of proof lies with the claimant at step four. Pinto, 249 F.3d at 845. The ALJ did so

in this case, however, and he relied on that testimony (as opposed, for example, to information in the Dictionary of Occupational Titles ("DOT") or in plaintiff's vocational report) to find that plaintiff's RFC does not preclude performance of his past relevant work as a telemarketer.

Plaintiff argues that none of the six hypothetical questions the ALJ propounded to the vocational expert accurately stated all of plaintiff's mental and physical limitations as delineated by the ALJ in his written decision. [See AR 267-270]. That criticism is valid. The ALJ's sixth hypothetical question [AR 270] came closest to his RFC finding, but that question omitted a moderate limitation in interacting appropriately with supervisors, coworkers and peers and a moderate limitation in responding appropriately to changes in a work setting. Neither of those precise limitations was posited in another hypothetical question, much less in a single question that accurately described all of the combined limitations that the ALJ ultimately found to exist.

Plaintiff also contends that the ALJ inadequately or incorrectly defined the extent of a "moderate" limitation. Here, again, plaintiff has a point. At a minimum, the ALJ provided what appear to be inconsistent definitions. First, he defined moderate to mean "more than slight, less than marked. Marked would preclude [the activity] and moderate would severely limit it, but not preclude it." [AR 270]. This definition seem consistent with the Commissioner's use of the terms "moderate" and "marked" in the mental disorder listings. Cf. 20 C.F.R. § 12.00C ("When we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."). When the vocational expert asked him to clarify the "quantity and frequency" involved, the ALJ muddied the waters by instructing the vocational expert that "it's more than [s]light, less than severe or

marked. It's the range between the two extremes." [AR 270]. "Severe," of course, is a social security term of art. The ALJ subsequently confused the matter further when he responded to plaintiff's counsel's observation that "a moderate impairment ... is a severe impairment" by saying

> moderate is simply that term, that word is pulled out of a hat to describe everything between the other two words that were pulled out of a hat which is slight and marked or mild and severe then [sic] it could be one moment away from slight or one moment away from severe.  It might be 99% and still be moderate.

[AR 271]. The ALJ used the term "severe" in a confusing and ambiguous manner, and he also appears to have expanded his original definition of moderate ("severely limits but does not preclude").

Therefore, the ALJ failed to incorporate all of the limitations in plaintiff's RFC in his hypothetical questions to the vocational expert, and he also gave the vocational expert an ambiguous definition of "moderate." These errors preclude the ALJ from relying on the vocational expert's testimony to support his finding that plaintiff's RFC does not preclude performance of his past relevant work as a telemarketer. See Pinto, 249 F.3d at 846-848 (reversing and remanding where the ALJ relied on a vocational expert's testimony to find that the plaintiff could perform her past relevant work, but neither that testimony nor other evidence in the record established that the claimant could meet all of the requirements of that job).

**Choice of remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is

within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

///

///

///

18

Enhancement of the record would be useful in this case to determine if plaintiff can perform his past relevant work or alternative work available in the national economy with all of the limitations found by the ALJ. Accordingly, the Commissioner's decision is **reversed**, and the matter is remanded for further administrative proceedings consistent with this memorandum of decision and a new decision.[4]

**IT IS SO ORDERED.**

DATED: September 25, 2006

                                      /s/
                                  ANDREW J. WISTRICH
                                  United States Magistrate Judge

---

[4] This disposition makes it unnecessary to consider plaintiff's additional contention that the ALJ erred in relying on the vocational expert's testimony because his RFC precludes him from meeting the Level 3 "Reasoning Development" requirement of the job of telemarketer as defined by the <u>Dictionary of Occupational Titles</u> ("DOT"). On remand, the record may be augmented to clarify the basis for any inconsistency that may exist between pertinent vocational expert testimony and the DOT.